DECISION
Plaintiff appeals the real market value and assessed value of her property identified as Account R105870 for tax years 2007-08 and 2008-09. A trial was held in the Oregon Tax Court courtroom, Salem, Oregon, on April 13, 2010. Plaintiff appeared on her own behalf. Leslie Cech, Appraisal Manager, Division of Assessment, Recording Taxation, Multnomah County, appeared on behalf of Defendant. Leanne Holz (Holz), Licensed Appraiser, testified for Defendant.
Plaintiff submitted a letter filed April 2, 2010, with various unlabeled documents and Defendant submitted a report filed February 23, 2010, with various unlabeled documents as exhibits.
 I. STATEMENT OF FACTS
Plaintiff purchased the subject property located in an area called Bridlemile in southwest Portland in 2004. Plaintiff paid $350,000 for 2,626 square feet, "less the 200 unusable from adding 3rd floor (8 ft x 21 ft), making it 2426 sq ft." (Ptf's Ltr at 1, 12, Apr 2, 2010.) Plaintiff testified that at the time Plaintiff purchased the subject property, which was originally built in 1980, she was unaware that over 50 percent of the structure was destroyed by fire in 1999 and "rebuilt," but not remodeled in the same year. She testified that when the structure was rebuilt *Page 2 
"a third floor master bedroom, bath and sitting room" were added. (Id. at 3.) Plaintiff testified that the "[n]ew(er) construction was done with the most basic materials (rental grade)." (Id.) She testified that "[t]he front does not have porch, nor a covering; just stairs leading to the entry, which is on a split level, and the entry inside the home is only 3 x 3 leaving no foyer." (Id. at 5.) (emphasis in original.) Plaintiff continued stating that "[t]here is no dining area; Only an eat-in kitchen" and "[t]he third level does not have a MEDIA ROOM." (Id.)
Plaintiff testified that at the time she purchased the property "it came with a disclosure that there were NO EASEMENTS on the property." (Id. at 1.) Plaintiff testified that there is one easement "for the drainage ditch/culvert which cuts through the West side" of her property and another "one for 5 feet at the north side of my property." (Id.) Plaintiff concluded that those two easements "devalue" the subject property.
The subject property's lot is "8114" square feet, less the "1280' (128 x 10') (based on usuable are at height of water) for culvert and the easement 480' (96' x 5'), or 6354 of usable space." (Id.) Plaintiff testified that the "[p]roperty is at the bottom of sewer," where the flushed out water "is dumped out the back of the property in the culvert" and "makes the back yard a mud mess * * *." (Id.)
Plaintiff testified that in "2006, Portland published a Walking Map sending thousands of people through my property." (Id. at 2.) She concluded that her "privacy and safety" are "compromised by the path." (Id.) Plaintiff testified that a surveillance camera was installed on her property in February 2010, and she recited a list of crimes that have occurred along the walking path.
Plaintiff testified that the value of the subject property was further reduced when she was required to remove "a lovely Curly Willow tree" and her neighbors removed 10 trees in 2007 *Page 3 
that provided privacy and absorbed the road noise from Beaverton Hillsdale Highway and Shattuck Road. (Id. at 3.) She testified that "[t]here are more than 4 low income and subsidized housing developments within ¼ mile (45th Street x Julia St). * * * Some of this housing actually has become lower income/subsidized since 2005." (Id. at 4.)
Plaintiff concludes that the real market value of the subject property as of January 1, 2007, and January 1, 2008, was $350,000. (Ptf's Ltr at 3, Oct 26, 2009.) Plaintiff submitted a document entitled Appraisal Summary Page, showing an appraised value of $410,000, for the subject property as of February 25, 2009. (Id. at 14.) The individual who prepared the report did not testify. In support of her requested values, Plaintiff submitted the real market values and assessed values on the 2007 tax roll for four properties located on her same street, SW Julia, and one located on SW 50th . (Id. at 12.) Plaintiff testified that the property located at 5006 S.W. Julia, which is larger than the subject property, was remodeled (kitchen upgraded) and has no negative impacts from storm water, sold in the "summer of 2007" for $439,000. (Id.)
For tax year 2007-08, Plaintiff asserted that her maximum assessed value and assessed value was $264,910. (Ptf's Ltr at Comp Sale Grid, Apr 2, 2010.) For tax year 2008-09, Plaintiff asserted that her maximum assessed value and assessed value was $272,850. (Multnomah County Board of Property Tax Appeals Order, Mar 31, 2009.) She requested the court determine that the assessed value for the assessment dates was $200,000. (Ptf's Ltr at 1, Apr 2, 2010.)
Holz, a licensed appraiser, presented her report that she testified was prepared in conformance with Uniform Standards of Professional Appraisal Practice. After considering the three approaches to valuation, Holz prepared her report using the market approach and she "considered [that approach] to be the best indicator of value." (Def's Report at 2, Feb 23, 2010.) *Page 4 
Holz testified that for tax year 2007-08 she selected three properties that she considered comparable to the subject, and for tax year 2008-09 she selected six properties. She testified that she made no adjustment for time because each of the comparable properties sold close to the assessment date. Holz testified that the adjusted value range for 2007-08 was $485,000 to $516,000. (Id. at 3.) She concluded that because the sale of comparable 2 occurred "closest to the valuation date" and was most similar "in age and condition" to the subject property it was given the most weight. After "[t]aking into consideration net adjustments, sales similarities in style and location," Holz estimated "the market value to be $498,000 on January 1, 2007. (Id.) Because that value is within "4% of the county RMV," Holz requested the court to "sustain" Defendant's real market value of $478,680 which is on the 2007-08 tax roll. (Def's Report at Comparable Sales Analysis, Jan 1, 2007.)
For tax year 2008-09, Holz selected six sales. The adjusted sale prices of those properties ranged from $465,800 to $503,300. (Id.) Of the six sales, Holz concluded that comparable 3 should be "given the most weight as it is closest to the subject, is the most similar in size, has the same bath count, and had a sales date closest to the target appraisal date." (Id.) After "[t]aking into consideration net adjustments, sales similarities in style and location," Holz estimated "the market value to be $489,000 on January 1, 2008." (Id.) Because that value is within "3% of the county RMV," Holz requested the court to "sustain" Defendant's real market value of $503,580 which is on the 2008-09 tax roll. (Id.)
 II. ANALYSIS
The issue before the court is the real market value of Plaintiff's property. Real market value is the standard used throughout the ad valorem statutes except for special assessments. See Richardson v.Clackamas County Assessor, TC-MD No 020869D, WL 21263620, at *2 (Mar 26, 2003) *Page 5 
(citing Gangle v. Dept. of Rev., 13 OTR 343, 345 (1995)). Real market value is defined in ORS 308.205(1), [1] which reads:
 "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."
A. Approaches of Valuation — Real Market Value
There are three approaches of valuation (cost, income, and comparable sales) that must be considered in determining the real market value of a property, even if one of the approaches is found to not be applicable. See
ORS 308.205(2) and OAR 150-308.205-(A)(2) (2007, 2008). Because the subject property is the primary residence of Plaintiff, the income approach is not applicable.
In a case such as the one before the court, the comparable sales approach "may be used to value improved properties, vacant land, or land being considered as though vacant." Chambers Management Corpand McKenzie River Motors v. Lane County Assessor, TC-MD No 060354D at 6 (Apr 3, 2007), citing Appraisal Institute,The Appraisal of Real Estate 335 (12th ed 2001). Plaintiff did not present a comparable sales approach to the court. Rather than present adjusted sales of comparable properties or submit an appraisal report as of the assessment dates, Plaintiff relied on tax roll values, questioning how her neighbors' real market values and assessed values could be lower than the subject property given the noted differences between those properties and her own. Plaintiffs approach is not an accepted method of valuation. *Page 6 
B. Burden of Proof
"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427 (2005) (emphasis added). Plaintiff must establish her claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." Schaefer v. Dept. of Rev., TC No 4530 at 4 (July 12, 2001) (citing Feves v. Dept. ofRevenue, 4 OTR 302 (1971)). This court has stated that "it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the RMV of their property."Poddar v. Dept. of Rev., 18 OTR 324, 332 (2005) (quotingWoods v. Dept. of Rev.,16 OTR 56, 59 (2002) (citation omitted).
Plaintiff presented no evidence of the real market value of her property as of the assessment dates, January 1, 2007, and January 1, 2008. Plaintiffs appraisal report prepared for her refinancing was prepared as of February 25, 2009, a date beyond the two assessment dates for the tax years before the court. Plaintiffs approach to determine real market value was not to value the entire subject property, but, rather, to criticize Defendant's analysis and to identify concerns (e.g., easements, quality, neighborhood). Even though Plaintiff is familiar with her property, she did not qualify herself as an expert on valuation. "When a plaintiff fails to establish any independent expertise and relies only on his own costs and his unsupported, personal opinions, a court weights plaintiffs words in the light of his self-interest." Erickson v. Commission,1 OTR 626, 629 (1964). Plaintiffs testimony was "vague and indefinite" and much of her testimony was an attack on Defendant's appraisal method and determinations. Id. Unfortunately, "[s]uch negative testimony does not establish an affirmative case" as required by statute. Id. Plaintiff failed to offer proof as to the real market value of her property. *Page 7 
C. Maximum Assessed Value
On November 12, 2009, the court wrote to Plaintiff:
 "[Y]our amended complaint requested an `Assessed Value of $200K.' There is no indication in your amended complaint how you computed that amount. Oregon's property tax system changed in 1997. Measure 50, adopted by the Oregon voters in May 1997, amended the state constitution by creating a `maximum assessed value', which for the 1997-98 tax year, was 90 percent of the property's real market value for the tax year beginning July 1, 1995 (1995-96). Each year the maximum assessed value cannot be increased by more than three percent. Or Const, Art XI, § 11(1)(b). Assessed value is the lesser of the property's real market value or maximum assessed value. ORS 308.146(2). There is no longer a direct link between real market value and assessed value."
At trial, the court asked Plaintiff for the statutory authority permitting the court to grant her request to determine maximum assessed value that in this case would also be assessed value. Plaintiff stated that the "error" occurred in 1999 when the "remodel" was valued and placed on the tax roll. The court explained that the tax year 1999-2000 is not before the court and there is no statutory authority for the court to review that tax year.
 III. CONCLUSION
Plaintiff failed to carry her burden of proof and prove the requested real market values and assessed values. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.
Dated this day of July 2010.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR. Your Complaint must besubmitted within 60 days after the date of the Decision or thisDecision becomes final and cannot be changed.
 This document was signed by Presiding Magistrate Jill A.Tanner on July 13, 2010. The Court filed and entered this documenton July 13, 2010.
[1] References to the Oregon Revised Statutes are to years 2005 and 2007. Changes to statutes between years will be noted.